FILED
OCT 1 2 2016
[Clerk signature]

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| ARTHUR J. BURNETTE, | Civ. No. 16-5092 |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| FIRSTCOMP INSURANCE COMPANY, | |
| Defendant. | |

Plaintiff Arthur J. Burnette ("Arthur"), by and through his undersigned attorneys, for his cause of action against Defendant Firstcomp Insurance Company, ("Firstcomp"), states and alleges as follows:

**PARTIES**

1. Plaintiff is currently a citizen of the State of South Dakota and resides in the County of Pennington.

2. Defendant Firstcomp Insurance Company is an insurance company which does business in the State of South Dakota but which is incorporated and has its principal place of business in a State other than South Dakota.

**JURISDICTION**

3. The amount in controversy exceeds $75,000.

4. Jurisdiction herein is based on 28 U.S.C. § 1332, Diversity of Citizenship.

**FACTS**

5. At all times relevant to this action, Defendant had in place a policy of insurance that, by its terms, required Firstcomp to pay workers' compensation benefits to employees of Kirk's Painting, who were injured within the course and scope of their employment.

6. On September 21, 2012, Arthur was in the employ of Kirk's Painting, when he fell from a ladder while painting, and sustained injuries to his wrists, knees, left ankle, head, and cervical spine.

7.  Arthur was found by a co-worker unconscious and was taken by ambulance to Rapid City Regional Hospital Emergency Department.

8.  Less than three business days after the accident and injury his employer had actual knowledge of the accident and injury.

9.  Following the fall, a First Report of Injury was filled out and completed.

10. Upon receipt of the claim Firstcomp denied compensability on October 1, 2012, claiming it did not have enough information to determine whether Arthur's injuries were compensable or not.

11. On October 2, 2012, orthopedic surgeon Robert J. Woodruff examined Arthur, noted concerns about his left upper extremity weakness, and ordered MRIs of his cervical and lumbar spine, and put him on sedentary work duties.

12. On October 2, 2012, Black Hills Orthopedic and Spine faxed an authorization request to Firstcomp adjuster Nicole Hall to approve the MRIs.

13. The MRIs were scheduled for October 9, 2012, but were cancelled because Firstcomp would not approve the MRIs.

14. On October 4, 2012, Firstcomp agreed to approve the MRIs, but only if the MRIs were with contrast to show and acute versus chronic condition, and other conditions.

15. On October 5, 2012, nurse case manager Karen Bielmaier scheduled Arthur to have an IME with Dr. Richard Farnham.

16. Firstcomp knew that Dr. Farnham regularly and routinely provides opinions to insurance companies that reduce the insurers' claim payments and that he is predictably biased in favor of the party paying him.

17. On October 8, 2012, Firstcomp and Ms. Bielmaier formally cancelled the MRIs scheduled for the next day because Dr. Woodruff would not agree to MRIs with contrast as required by Firstcomp.

18. On October 8, 2012, Ms. Bielmaier explained to adjuster Carol Von Escjem that MRIs typically are not done with contrast unless the patient has had a surgical procedure on that area.

19. On October 25, 2012, Firstcomp adjuster Carol Von Eschen spoke with employer Michael Kirchgasler and told him "I need them to prove IW (injured worker) was willfully negligent in this case."

20. On October 25, 2012, Firstcomp adjuster Carol Von Eschen determined that she was withholding all further authorizations pending Dr. Farnham's IME report.

21. On October 26, 2012, Dr. Woodruff reviewed the MRIs and determined that there was a compression on the spinal cord and Arthur needed an immediate two-level fusion.

22. On October 27, 2012, Dr. Farnham examined Arthur and agreed that neck injury and need for surgery was work related.

23. On October 30, 2012, Firstcomp employee John Kuehl noted that he was "not sure there is enough to deny the claim for willful misconduct."

24. As a result of Firstcomp's denials, Arthur had to hire attorney John Dorsey.

25. Attorney Dorsey faxed and mailed letters to adjuster Von Eschen on November 1 and 5 asking for approval of treatment and payment of disability benefits.

26. Firstcomp then retained defense attorney Jeremy Nauman who, via letter dated November 5, 2012, advised attorney Dorsey that Firstcomp was denying the claim its entirety based on willful misconduct.

27. On December 12, 2012, attorney Dorsey filed the Petition for Hearing with the Department of Labor.

28. On January 14, 2012, attorney Nauman issued an Answer generally denying the Claimant's allegation and alleging, among other things, that Claimant's willful misconduct in failing to follow stated safety instructions is the proximate cause of any injury sustained, barring any recovery pursuant to SDCL 62-4-37."

29. On January 30, 2013, counsel for Claimant deposed the employer, Michael Kirchgasler.

30. Mr. Kirchgasler admitted there were no written safety rules or safety meetings requiring employees to stake their ladders or have a another employee holding the ladder.

31. Mr. Kirchgasler admitted that he was not aware of "willful misconduct" or that it could bar Arthur's claim until adjuster Von Eschen raised the topic.

32. The claim of barring workers' compensation benefits arose after Mr. Kirchgasler himself fell off a ladder while working without having another employee hold the ladder.

33. On February 21, 2013, counsel for Claimant sent a letter to counsel for Defendant explaining that the Insurer's denial was wrongful, in bad faith, and a willful conduct claim could not be maintained.

34. On February 27, 2013, counsel for Insurer issued a letter withdrawing the defense of willful misconduct and advised that it would accept as compensable the cervical injury, all medical treatment related to the cervical injury, and pay past disability benefits.

35. On April 25, 2013, Insurer had Claimant undergo another IME, this time with Dr. Nolan Segal through ExamWorks.

36. Firstcomp knew that Dr. Segal regularly and routinely provides opinions to insurance companies that reduce the insurers' claim payments and that he is predictably biased in favor of the party paying him.

37. On May 18, 2013, Dr. Segal issued a report stating he agreed the fall of September 21, 2012, remains a major contributing cause of Arthur's cervical spine condition, that he has significant nerve damage on his left side as a result of the fall, and if he did undergo an additional surgery it would be related to the original fall.

38. On December 18, 2013, Insurer again denied paying for Claimant's left side weakness and falling and denied his referral to the Mayo Clinic—claiming that Dr. Woodruff's was of the opinion that the weakness and falls were not related to the spinal cord injury.

39. In response to the denial, on December 31, 2013, Dr. Woodruff sent attorney Nauman a note explaining it was Dr. Woodruff's opinion that "all his left-sided weakness, giving out, falls,, and numbness and tingling are related to his work place injury from September 26, 2012 regardless of whether are from a cervical spinal cord injury, nerve root injury, head injury or other cause."

40. On January 13, 2014, Firstcomp issued a letter through its attorney withdrawing its denial of covering the falls and left sided weakness; however, Firstcomp refused to pay for the body parts injured as a result of those falls.

41. In fact, on January 31, 2014, counsel for Claimant sent a letter to attorney Nauman asking whether Firstcomp would pay for his medical treatment related to the falls.

42. Firstcomp refused to explain why it was not covering the medial treatment for the falls even after the treating doctors explained they were caused by the spinal cord injury.

43. Firstcomp did not have any medical support for its denial until it got a records review report from Dr. Segal dated September 24, 2014.

44. On April 2, 2015, approximately one week before Easter, attorney Nauman indicated Firstcomp was cancelling Arthur's workers' compensation benefits because Arthur was unable to travel to the Mayo Clinic for a pain program.

45. Arthur could not travel for several reasons, including that he had a fall because of his spinal cord injury and injured his ankle, requiring surgery.

46. Firstcomp refused to reinstate benefits and counsel for Claimant had to file a Motion with the South Dakota Department of Labor to order Firstcomp to reinstate benefits.

47. On April 17, 2015, the South Dakota Department of Labor granted Claimant's motion and ordered Firstcomp to reinstate benefits.

48. On or about January 22, 2016, attorney Nauman confirmed that it would pay a lump sum of $230,000 to settle Arthur's workers' compensation claims and that it would pay $123,688 for Arthur to administer in a WCMSA.

49. When Firstcomp provided the settlement language it wanted Arthur to also agree to dismiss all tort claims he had against Firstcomp.

50. That language was omitted from the settlement agreement and it was clarified that nothing in the settlement agreement would prevent Claimatn from suing Firstcomp for tort or bad faith in its handling of his workers' compensation claim.

## COUNT I
## BAD FAITH & UNFAIR AND DECEPTIVE TRADE PRACTICES

51. Plaintiff hereby reincorporates by reference the foregoing paragraphs.

52. At all material times, Firstcomp committed the wrongful acts herein alleged through agents or employees who were acting within the purposes and scope of its authority and employment.

53. With actual notice of Plaintiff's compensable injuries, Firstcomp acted knowingly and without reasonable basis in refusing to make a reasonable, prompt, and adequate investigation of Plaintiff's claim for compensation. This was done for the purposes of discouraging, avoiding, or reducing the compensation due to Plaintiff.

54. Firstcomp, without any reasonable basis and for the purpose of discouraging, avoiding, or reducing the compensation due to Plaintiff, intentionally and wrongfully denied Plaintiff's workers' compensation claim.

55. Firstcomp either knew or should have known of the lack of reasonable basis for denial of benefits.

56. Firstcomp denied workers' compensation benefits in this case in violation of the covenant of good faith and fair dealing and acted in bad faith.

57. Firstcomp also failed to give equal consideration to the interests of Plaintiff, have ignored facts that support his claim, and have ignored law that requires payment of the claim.

58. Firstcomp actions constituting bad faith included, but were not limited to, the following:

   a. Firstcomp breached its duty to adjust Plaintiff's claim in good faith and to investigate every available source of information, set out to collect the minimum facts necessary to support a denial of the claim;

   b. Firstcomp took actions which injured the Plaintiff's rights;

   c. Firstcomp failed to fulfill its continuing duty to investigate and evaluate the claim; and

   d. Firstcomp terminated Plaintiff's worker's compensation benefits without any reasonable basis for doing so and caused Plaintiff to suffer worse injury including permanent and irreversible nerve damage that will affect him for the rest of his life.

59. Firstcomp acted in accordance with its standard practices, policies, and procedures, pursuant to a plan not to pay legitimate claims, thereby unlawfully minimizing claim payments and maximizing its own profits.

6

60. Firstcomp is liable to Plaintiff for unfair trade practices in violation of South Dakota law.

61. As a legal result of this conduct, Plaintiff has experienced financial loss and hardship, severe emotional and physical distress, and shame and embarrassment.

62. Plaintiff is entitled to damages as a result of the breach of the implied duty of good faith and fair dealing.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

63. Plaintiff hereby realleges all previous paragraphs as if set forth herein.

64. Firstcomp knew, or in the exercise of reasonable care should have known, that its behavior and actions in the denial of benefits, and subsequent handling of this claim would result in serious physical and emotional distress to the Plaintiff due to his medical and financial position.

65. In doing the acts alleged in this Complaint, Firstcomp acted with reckless, intentional, and deliberate disregard for the likelihood that Plaintiff would suffer severe emotional distress as a direct and proximate result of its actions.

66. As a legal result of this conduct, Plaintiff has experienced financial loss and hardship, severe emotional and physical distress, and shame and embarrassment.

67. Plaintiff is entitled to damages as a result of the intentional infliction of emotional distress.

## COUNT III
## VEXATIOUS REFUSAL TO PAY

68. Plaintiff hereby realleges all previous paragraphs as if set forth herein.

69. Firstcomp's refusal to timely pay the full amount of benefits was vexatious or without reasonable cause, and pursuant to SDCL § 58-12-3, Plaintiff is entitled to his attorney's fees and costs.

## COUNT IV
## PUNITIVE DAMAGES

70. Plaintiff hereby realleges all previous paragraphs as if set forth herein.

71. Defendant has acted with oppression, fraud, express and implied malice and a reckless disregard for the rights of Plaintiff by refusing and delaying in providing compensation benefits owed to Plaintiff, and intentionally inflicting emotional distress upon Plaintiff.

72. Upon information and belief, Defendant has engaged in a pattern and practice of acting in bad faith.

73. Punitive damages are appropriate in this case pursuant to SDCL § 21-3-2 in order to punish and deter Defendant from continuing in this course of conduct.

WHEREFORE, the Plaintiff prays for judgment as follows:
1. All damages (compensatory, general, special, and consequential) in an amount to be determined at trial;
2. Punitive damages in an amount to be justly determined by the jury;
3. Attorneys' fees, costs, disbursements herein, and interest; and
4. Such other and further relief as the Court deems just and proper.

Respectfully submitted this 12 day of October, 2016.

BEARDSLEY, JENSEN & LEE, Prof. L.L.C.

By: _____
Brad J. Lee
4200 Beach Drive, Suite 3
P.O. Box 9579
Rapid City, SD  57709
Telephone:  (605) 721-2800
Facsimile:  (605) 721-2801
Email:  blee@blackhillslaw.com
*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Pursuant to the provisions of Federal Rule of Civil Procedure 38(b), Plaintiff Arthur J. Burnette hereby demands a trial by jury of any issue triable of right by jury.

_____
Brad J. Lee